73 N.J. Super. 545 (1962)
180 A.2d 356
GEORGE A. WELLS, PLAINTIFF,
v.
MATTIE BELLE ROBINSON WELLS, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided February 13, 1962.
Messrs. Zucker, Brach & Eichler, attorneys for plaintiff.
*546 HAND, J.S.C.
Plaintiff George A. Wells seeks a dissolution of his marriage to Mattie Belle Robinson Wells on the ground of desertion.
The parties were married November 26, 1929.
Plaintiff proved and corroborated the marriage, his residence for jurisdictional purposes and the cause of action.
Although the desertion occurred on or about April 1, 1933, the court holds that the defense of laches should not be invoked.
It should be noted that at the outset of the hearing, the attorney for plaintiff, William L. Brach, Esq., stated frankly that plaintiff married another woman, namely, one Ruby Wells, in the year 1944, some 11 years after the desertion by defendant, Mattie.
Plaintiff's testimony was very credible. He admitted that he learned that Mattie was still living during the early part of 1961. In fact, defendant was served with copies of the summons and complaint in Detroit, Michigan, on July 11, 1961.
Plaintiff also testified that he and Ruby continued to live together as husband and wife and had sexual relations after plaintiff had learned of the fact that Mattie was still alive.
Although defendant filed no answer and the case was heard as an uncontested matter, the court invoked the defense of recrimination and dismissed the complaint on the ground that plaintiff had committed adultery with Ruby after the cause of action in his favor had arisen against Mattie on the ground of desertion.
Attorney Brach, in addition to measuring up fully to his function as an officer of the court, represented his client with utmost diligence.
Plaintiff's attorney stated that there is no case directly in point in New Jersey to the matter at bar. The court has been unable to find any precedent containing a similar factual situation in which a judgment for divorce was entered.
*547 Plaintiff's attorney submitted two well-reasoned memoranda. Plaintiff himself proved to be an appealing figure on the witness stand.
Plaintiff's attorney contended that:
1. After seven years' absence of a spouse, the other spouse may legally remarry without a divorce and the second marriage is presumptively valid under common law and under N.J.S. 3A:40-1.
2. Where parties are innocent and they enter into a second ceremonial marriage under a justifiable belief that they have the capacity to marry, their participation in normal marital relations does not constitute adultery within the meaning of the divorce laws of this state.
3. Even if the plaintiff's relations with Ruby Wells be considered as technically adulterous, nevertheless, the bar of recrimination as an equitable bar is not applicable under the facts of this case.
4. Cohabitation arising out of the remarriage of the plaintiff in a divorce action where innocent and under the honest belief of capacity to remarry does not constitute adultery and, therefore, does not raise recrimination as a bar to a decree.
5. The court, under New Jersey law, has discretion in applying the common law defense of "recrimination" and is not bound to apply it mechanically or by rote.
The court has reached these conclusions as to the various arguments raised by counsel.
As to point 1, the fact that defendant is still living destroys any presumption of her death that may have arisen in favor of plaintiff at the time of his marriage to Ruby.
As to point 2, any support for this contention was overborne when plaintiff learned that defendant was still alive in 1961 and thereafter he continued to engage in sexual relations with Ruby.
The effect of the continuance of the marital relationship was discussed in a nullity proceeding where the plaintiff, though innocent at the outset, continued to cohabit after *548 learning of the illegality of the relationship. Endres v. Grove, 34 N.J. Super. 146, 148 (Ch. Div. 1955); here Conford, J.S.C., said:
"Both logic and the apparent trend of the authorities lead to the same result where the complaining party, though innocent at the outset, continues to cohabit with the defendant after learning of the illegality of the relationship. * * * The rule was restated that broadly by the Appellate Division of this Court in Dacunzo v. Edgye, 33 N.J. Super. 504, where it was said:
`The question which must concern us in determining whether plaintiff is guilty of inequitable conduct is: Did he go through a ceremonial marriage with defendant, or continue to live with her as man and wife, knowing or having reason to know of the existence of an impediment to lawful wedlock.' (Emphasis added.)"
As to point 3, the court disagrees with attorney's contention. The court is of the opinion that defense of recrimination under the facts of the case has been established.
As to point 4, even though plaintiff and Ruby may have cohabited innocently at the time of their marriage, since the presumption of innocence has been destroyed and since plaintiff and Ruby have continued their marital relations after learning of Mattie's physical existence, the court can reach no other conclusion than that these parties committed adultery.
As to point 5, while the court may enjoy discretion in applying the doctrine of "recrimination," nevertheless, the discretion should be used wisely and conscientiously. Young v. Young, 94 N.J. Eq. 155, 157 (E. & A. 1922), here Gummere, C.J., said:
"As a general rule, however, it is considered that recrimination is a defense which must be pleaded in order to justify the court in considering it; and that, in the absence of an answer setting it up, the court will not permit the defendant to prove it in bar of the petitioner's action. * * * But this rule is not universal in its application. One of the exceptions to it is that the relief prayed for by the petitioner will not be granted, notwithstanding that recrimination is not set up as a defense, if he in putting in his case shows his own guilt. * * * The ground for this exception given is that when the complainant himself shows that *549 he is in pari delicto and does not come into court with clean hands, a court of justice will not grant him the relief to which he would otherwise be entitled."
In Judkins v. Judkins, 22 N.J. Super. 516, 537 (Ch. Div. 1952), Goldmann, J.S.C., said:
"Our courts have not hesitated to import into divorce and nullity suits, which are sui generis, maxims and rules commonly applied in equity suits. * * * Among the circumstances which may be material are unclean hands, laches, undue delay, or the generally inequitable conduct of the party seeking relief."
And Godfrey v. Shatwell, 38 N.J. Super. 501, 506 (Ch. Div. 1955), at page 506, Conford, J.A.D. (temporarily assigned), said:
"The public is a party to every matrimonial litigation and the vulnerability, nay, indeed, the absence, of a defense will not relieve the court of its own obligation to see to the strict satisfaction of every requisite before granting a judgment of divorce or annulment of marriage."
This court, as stated, commends both Attorney Brach for his forthrightness and diligence and the plaintiff for his candor. As a practical matter, it does seem that plaintiff might well deserve favorable, equitable consideration after some 18 years of a compatible matrimonial relationship with Ruby and that this relationship might well be invested with legality, rather than being consigned to the status of an illegal relationship.
However, this trial court does not feel justified in holding otherwise than what it believes to be the correct application of the law to this set of facts.
The complaint is dismissed.